ROWLING *v.* ROWLING.

1. DIVORCE—PLEADING—ALLEGATIONS SHOULD BE SPECIFIC.
    A suit for a divorce should be treated by the attorneys as a real law suit, in which the allegations of misconduct complained of should be specifically averred with date and place, and such incidental statements as would inform the defendant of that which he is called upon to answer.[1]

[1]Divorce, 19 C. J. § 274.

2. SAME—WIFE NOT ENTITLED TO DECREE WHERE GUILTY OF SAME CONDUCT CHARGED AGAINST HUSBAND.

> Although, in a suit by a wife for a divorce, it appears that defendant called plaintiff names and occasionally swore at her, such conduct does not entitle her to a decree, where it also appears that the parties frequently quarreled and abused each other, and that plaintiff was guilty of conduct similar to that of defendant.[2]

3. SAME—PLEADING—VARIANCE—TESTIMONY ADMITTED WITHOUT OBJECTION SHOULD BE CONSIDERED.

> Although the bill, in a suit for divorce, did not contain any allegations of personal violence, where testimony relating thereto was admitted without objection, it should be considered, on appeal, in view of the fact that the bill might have been amended in this particular.[3]

4. SAME—EXTREME CRUELTY—PERSONAL VIOLENCE.

> A charge of extreme cruelty founded on personal violence, in a suit for divorce, is appealing to a court.[4]

5. SAME—PROOF OF PERSONAL VIOLENCE INSUFFICIENT.

> Where there were no charges of personal violence in a wife's bill for divorce, her uncorroborated testimony in regard thereto, which when considered as a whole leads strongly to the conclusion that her charges are grossly exaggerated, forms no sufficient ground for a divorce.[5]

6. SAME—MOTION TO REMAND TO TAKE FURTHER PROOF DENIED WHERE PROPOSED TESTIMONY NOT NEWLY-DISCOVERED.

> A motion to remand for the purpose of taking further proof will be denied, where the proposed testimony cannot be considered as newly-discovered; the witness having been available at the time of the hearing.[6]

Appeal from Washtenaw; Sample (George W.), J. Submitted April 8, 1926. (Docket No. 52.) Decided June 7, 1926.

Bill by Anna J. Rowling against William C. Rowling for a divorce. From a decree dismissing the bill, plaintiff appeals. Affirmed.

---

[2]Divorce, 19 C. J. § 97; [3]Id., 19 C. J. § 330; [4]Id., 19 C. J. § 330; [5]Id., 19 C. J. § 326; [6]Id., 19 C. J. § 461.

*Louis E. Burke* and *Jacob F. Fahrner,* for plaintiff.

*Bonisteel & Blakeslee,* for defendant.

SHARPE, J.    Plaintiff appeals from a decree of the trial court dismissing her bill for divorce.   The parties were married in 1905, and separated in August, 1924. She is 52 years of age and he a few years younger. They have one child, a daughter, now 20 years of age.    The allegations in the bill are general.    They may be thus summarized: cursing and swearing at her; threatening her with personal violence; abusive conduct to their daughter, and threats to take her life; was stingy and miserly; faultfinding, nagging and abuse; fear that he will do her bodily harm.    No date is assigned as to any occurrence, nor is any incident mentioned to inform the defendant or the court of any particular act of misconduct relied on.

The bill in this case but follows the usual practice in preparing such pleadings.    We may assume an intent to charge extreme cruelty and nonsupport, although these terms are not mentioned.    It may also be observed that it contains no charge of physical violence, although several acts of this nature are relied on to entitle plaintiff to a decree.    We can but urge attorneys to treat a proceeding for divorce as a real law suit, in which the allegations of misconduct complained of shall be specifically averred, with date and place and such incidental statements as will inform the defendant of that which he is called upon to answer.    While the evidence need not be pleaded, it is unfair to a defendant to be required to meet such charges, and to the courts to expect them to review the many years of married life of the parties and ascertain whether one or more of the grounds on which a divorce may be granted has been established.    We are not intimating that a long-continued course of illtreatment may not be averred and proven, but

domestic difficulties, perhaps almost forgotten when the separation occurred, aid but little in reaching a final conclusion as to whether the proofs entitle the complaining party to a decree.    We are not intimating that the record in this case differs materially from that usually presented in such cases.    The labor of the trial court and of this court on appeal will be much lessened by specific allegations in the bill of the misconduct complained of, and by confining the proofs so far as possible to the issues thus presented.

We have read this record with care and, aided by the briefs of counsel, have sought to collect the proofs bearing on particular charges, in order to determine whether the plaintiff has established them by a preponderance of the evidence submitted.    The unkindness of which plaintiff first complains is thus stated by her:

"I have alleged that the defendant has been guilty of extreme and repeated cruelty towards me.    We had not been home very long from our wedding trip when he became guilty of that, I brushed his coat collar and brushed it the wrong way of the nap, and he said, 'You don't know how to brush a coat collar.'

"Q. You may state whether or not at any time after marriage he began to curse and swear at you and call you nasty names?

"A. Before my little girl was born I asked him if he would buy an extra bed for the nurse.    He refused to give anything for clothes or anything, we didn't need it.    That was our first contest."

That the defendant occasionally swore at plaintiff and called her names like "dumb-bell," "blockhead," and "fool," is clearly established.    She admitted, however, on cross-examination, that she had called him a liar "maybe a dozen times," and that she had sworn at him.    He testifies that she called him "Kaiser Bill, bullhead, miser," and that the word liar was "her pet epithet."    Plaintiff admitted that she called his sister

a "red-headed devil." It is apparent that these parties frequently quarreled and abused each other, but we are not persuaded that the conduct of the defendant in this respect, in view of that of plaintiff, entitles plaintiff to a decree.

That defendant has threatened plaintiff with personal violence is proven, but he testified that she was guilty of the same offense.

"Just as soon as something turned up that wasn't going her way—'You are a liar; you are a liar; I will brain you, you liar' and she would accompany that by a blow."

While, as stated, the bill does not contain any allegation of personal violence, the testimony relating thereto was admitted without objection, and, as the bill might have been amended, we think it should be considered. The most serious act of this nature of which she complains arose out of an altercation between them concerning the reading of his father's will, the date of which is not stated. She testified:

"I went on the porch and I screamed and he pulled me and pulled my arm out of joint and I am suffering from it today; he threw me the whole length of his mother's hall and his brother picked me up and said, 'Do you come in dead or alive.'

"*Q.* You may state whether or not your spine is disabled to this day?

"*A.* Yes, I went to three doctors."

The defendant positively denies that he assaulted plaintiff on this occasion. He testified:

"I took one hand to her mouth and the other at her back—she was yelling murder in the middle of the town."

Her testimony in this respect is uncorroborated, although there were several others in the house at that time. Had she called one or more of the doctors by whom she testified she was treated, the injury she

received might have been established.    He not only denies all charges of personal violence, but he testifies to acts of that nature committed by her upon him.

"She would run up to me and say: 'You are a liar' and punch my head and face—everything of that kind."        .

She admits that she at one time turned the hose on him in anger.

It is well known that a charge of extreme cruelty founded on personal violence is appealing to a court. A husband will always find much difficulty in justifying an assault upon his wife.    The omission of any charge of this nature in the bill of complaint and the testimony of the plaintiff, when considered as a whole, leads strongly to the conclusion that her charges in this respect are grossly exaggerated, and, when met with his denial, form no sufficient ground for a divorce.

It is unfortunate that the plaintiff left the defendant's home.    They had struggled along through lean years when his earnings were barely sufficient for their actual needs.    The last few years of their married life he had been in receipt of an income which bid fair to secure to them a good living.    He had bought some property near Ann Arbor, and was building a comfortable home on it.    There had been friction over the presence of plaintiff's father in the household.    But he had then left, and, as we read the record, the chances for their future happiness seemed bright.    Less than a year before their separation she wrote him:

"Dear Will: Rec'd your letter yesterday.    I don't see why it wouldn't be even better to have garage attached to the house.    I have been thinking about the chimney for the kitchen.    I don't just see how you can put a stove pipe hole in that corner you had planned to have the kitchen cupboard there.    I thought it would be a good idea not to have any chimney at all in the rear seeing it don't go to the

basement. I thought we could put our range in the basement and our oil stove in the kitchen and then the one chimney would take care of stove, furnace and grate. I guess the house is about rented to a man, wife and baby. If you can, try and come home Sat. 18th. It has been nice and cool here all week but no rain. Everything is dried up. Mrs. Hansen came down yesterday. She told me I could have all the raspberry current (blk & red) bushes they could spare. I guess Margaret is writing you about the car. If I were you and if it is possible I would bring it home. It would save on train fare over there and would give Mar. a chance to get acquainted with the car on these roads before driving in the city. Hope you have the bulk of your work caught up. Best wishes. ANNA. x x x"

He acceded to her request and purchased a Chevrolet coupé for their daughter. We are impressed that the daughter, who was at that time a student at the university, was the immediate cause of their separation. She had taken a dislike to her father because he insisted on directing her education and controlling her conduct to some extent. Plaintiff admits that her daughter said to her:

"She said she wouldn't have any home. She said I could live with her father if I wanted to. She said, 'If you prefer him to me, take him.' "

And the daughter testified:

"I merely stated if my mother preferred my father to me she could have him. I would leave because I found I could stay there no longer and I was capable of making my own way."

The plaintiff testified:

"I never had any contemplation of filing a bill for divorce while my father lived with me."

It is significant that her father, who was a member of the household for about nine years, was not called as a witness. Provoked by the defendant's insistence

that the father should make his home elsewhere, and egged on by her daughter's ultimatum, she brings this suit.    We feel constrained to hold that the decree of the trial court dismissing her bill was warranted by the proof.

Plaintiff moved for a rehearing in the circuit court. It was denied.    Her counsel, after submission of the cause in this court, ask us to remand it for further proof.    They desire to take the testimony of defendant's brother Paul.    Such testimony cannot be considered as newly-discovered.    In her testimony she stated that he picked her up when she was thrown in the hall.    He was available as a witness at the time of the hearing.    The motion to remand will be denied.

The decree is affirmed.    No costs are allowed.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.